**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**PAUL BRANCH,**

  **Petitioner,**

**vs.**

          **CASE NO. 4:08cv447-MP/WCS**

**WALTER McNEIL,**

  **Respondent.**

_____/


## REPORT AND RECOMMENDATION

  This is a petition for writ of habeas corpus filed by Paul Branch pursuant to 28

U.S.C. § 2254. Doc. 1. Petitioner challenges his conviction for possession of cocaine

in the Circuit Court of the Second Judicial Circuit, in and for Jefferson County, Florida,

case number 04-077-CFA. *Id.* Respondent filed an answer and the record in paper

form. Doc. 15. References herein to exhibits are to the record in paper form. Petitioner

filed a "reply," doc. 17, but the document does not respond to the answer and is not a

traverse. Doc. 18.

**Summary of procedural history[1]**

Petitioner was initially charged with possession of cocaine. On October 11, 2004, Petitioner appeared before the state court and, during the plea colloquy, entered a *nolo contendere* plea on the cocaine charge, a third degree felony, and on the four bad check misdemeanor charges. Petitioner was sentenced to one year and one day in prison to be followed by two years of probation. The court recommended that Petitioner be placed in the Modality II drug program while in prison, but if he did not qualify for that program, to enroll on release into what was referred to as the "NPI" drug treatment program. He was to stay in county jail for as much as 11 months 29 days after his prison term until a bed space opened in the NPI program.

On December 12, 2005, Petitioner was again before the court for violation of probation. Probation was revoked and he was sentenced to five years in prison.

This petition challenges the original no contest plea and sentence, and the sentence imposed after revocation of probation. The one year for filing a § 2254 petition in this court begins from the date of the new sentence, even though there is also a challenge to the original conviction. Ferreira v. Secretary, Dept. of Corrections, 494 F.3d 1286 (11th Cir.(Fla.) Aug 07, 2007), *cert. denied,* 129 S.Ct. 1033 (2009) (overruling Rainey v. Sec'y for the Dep't of Corr., 443 F.3d 1323 (11th Cir. 2006)); see also Robbins v. Sec for the Department of Corrections, 483 F.3d 737, 738 (11th Cir. 2007). Respondent concedes that the petition was timely filed. Doc. 15, p. 7.

---

[1] This is briefly summarized from Respondent's memorandum. Doc. 15, p. 2.

**Jurisdiction and mootness**

Petitioner stated in his petitioner that he expected to be released on January 16, 2009.  The petition was signed on October 8, 2008.  Doc. 1, p. 9.  Petitioner provided the court with a change of address on January 16, 2009, which appears to be a private residence.  Doc. 5.  Petitioner's name cannot be found in a search of the Department website as either still in custody or under supervision.[2]  As will be discussed ahead, clams that seek release from prison are now moot.  The court has jurisdiction, however, as this petition was filed when Petitioner was in custody.  Minor v. Dugger, 864 F.2d 124, 127 (11th Cir. 1989), citing Evitts v. Lucy, 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985).

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (citing Picard).  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Further, if no

---

[2] This is found at http://www.dc.state.fl.us/ActiveInmates/search.asp for current prisoners and http://www.dc.state.fl.us/ActiveOffenders/SEARCH.ASP for individuals under supervision.

Case No. 4:08cv447-MP/WCS

constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant.  Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

If a claim was not fairly presented but is procedurally barred from further state court review,[3] Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For a claim which was fairly presented and adjudicated on the merits by the state court, the state court's factual determinations are presumed correct unless the Petitioner rebuts the presumption by clear and convincing evidence.  § 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation omitted). Further, § 2254(e)(2) limits the circumstances when this court may hold an evidentiary hearing.  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159  L.Ed.2d 683 (2004).

As to legal issues, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim:

---

[3] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default.  *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146  L.Ed.2d 389

(2000); Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125

(2000).

For an ineffectiveness of counsel claim, the "clearly established" standard is set

forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of

counsel must identify the acts or omissions of counsel that are alleged not to have been

the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In

determining whether counsel gave adequate assistance, "counsel is strongly presumed

to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner

has a heavy burden, as he must show that "no competent counsel would have taken the

action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).  There are

no rigid requirements or absolute duty to investigate a particular line of defense, and

"more is not always better."  Id. (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

While <u>Strickland</u> explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of <u>Strickland</u> is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

**Ground one**

Petitioner argues that the sentence imposed following his original plea was vindictive, in violation of due process. Doc. 1, p. 4. Petitioner asserts that the trial court, on its own, rejected the first plea agreement. *Id.*

Vindictive sentencing occurs when a harsher sentence is imposed upon a defendant for exercising a constitutional right.

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

<u>North Carolina v. Pearce</u>, 395 U.S. 711, 725, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969); <u>Alabama v. Smith</u>, 490 U.S. 794, 798-799, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989) (approving the general rule but rejecting the presumption).

Respondent argues that this claim is procedurally defaulted because it was not raised on direct appeal. Doc. 15, p. 10. Respondent is correct that a vindictive sentence claim is generally raised on direct appeal. *E.g.*, <u>Wilson v. State</u>, 845 So. 2d 142 (Fla. 2003) (the trial judge participated in failed plea negotiations, the defendant rejected the plea, *went to trial*, and was convicted, and a harsher sentence allegedly

was imposed after conviction); <u>Jones v. State</u>, 35 So. 3d 146 (Fla. 3d DCA 2010) (claim of ineffective assistance of appellate counsel for failure to raise claim on direct appeal).

In this case, however, Petitioner seeks to withdraw his plea. Doc. 1, p. 9. Generously construing the claim, as the court must do for a *pro se* litigant, this claim appears to be the same claim raised in Petitioner's Rule 3.850 motion as ground one. The Rule 3.850 claim was that the original plea was involuntary because the court rejected a more favorable plea agreement and forced Petitioner to accept a less favorable agreement and then allegedly imposed a vindictive sentence. Ex. L, R. 6. This is, essentially, a claim that the plea was involuntary. A claim that "the plea was involuntary" may be raised by a Rule 3.850 motion. FLA. R. CRIM. P. 3.850(a)(5).

The Rule 3.850 court denied the claim on the merits. Ex. L, R. 34-35. An appeal was taken, though the parties did not file briefs, and the order denying the Rule 3.850 motion was affirmed. Doc. 15, pp. 4-5; Ex. L, R. 112 (judicial acts to be reviewed); Ex. M. Petitioner exhausted state court remedies as to a claim that the sentence was vindictive and, as a consequence, the plea was involuntary.

The state court denied the claim, reasoning:

> Defendant first alleges his original plea entered Oct. 11, 2004 was involuntary because the Court initiated the plea negotiations without the parties requesting it and after Defendant was willing to accept the State's plea offer. Defendant claims this resulted in a harsher, vindictive sentence that he did not agree with. As the plea and sentencing transcript shows, the Court did not "initiate" any plea negotiations, but rather discussed the details of the plea agreement at length with defense counsel and the State, a discussion in which Defendant participated. *Exh. 1 – 10/14/04 Plea & Sentencing Trans., pp. 3-12.* Judicial participation in the plea bargaining process is permissible. *State v. Warner,* 762 So. 2d 507, 513-14 (Fla. 2000).

The Court explained the agreed-upon plea to Defendant on more than one occasion, both the first agreement and then again when the agreement changed slightly, and each time Defendant indicated he understood and agreed with the plea. *Exh. 1– pp. 6, 12-13*. The Court then went through an extensive plea colloquy with Defendant, to which Defendant responded in the affirmative. *Exh. 1 – pp. 15-17*. As shown by the record, Defendant's plea was voluntarily and knowingly made.

Ex. L, R. 34-35.

The plea and sentencing transcript is exhibit 1 to the order denying Rule 3.850 relief. Ex. L, R. 43-65.[4] Petitioner's counsel said that a plea agreement had been reached in which, among other things, Petitioner would enter a plea of *nolo contendere* to possession of cocaine and to the four bad check charges and would be sentenced to two years probation, with the condition that he complete NPI inpatient drug treatment. *Id.*, R. 45. He was to be released from jail that day, and he would be sentenced to time served on the check charges. *Id.* However, the Court said that it preferred that Petitioner stay in county jail until a space opened in the inpatient treatment program. *Id.*, R. 46. The Court told Petitioner that it would permit the plea agreement if it contained a condition that Petitioner spend an additional 5 months 29 days in county jail to be followed by inpatient treatment. *Id.*, R. 47. Petitioner's attorney said that Petitioner did not agree to those terms and asked that the case be set for trial. *Id.*

Petitioner then asked the court where the six months in jail came from. *Id.*, R. 48. The court said that the five months, 29 days, in jail would be acceptable, but if Petitioner did not agree, "we'll go to trial." *Id.* Petitioner asked the court whether the six months in jail would run with the two years probation, and the court said yes, the six

---

[4] It is also Ex. B.

months in jail would be a condition of two years felony drug offender probation. *Id*.

Petitioner said he would agree to the plea agreement as revised. *Id*. The court then

explained that the agreement was for two years felony drug offender probation, with the

special condition that Petitioner first serve five months 29 days in jail, and possibly stay

in jail longer until a space opened at NPI, and thereafter complete the drug program.

*Id*., R. 49. The court then agreed to allow 52 days of jail credit against the jail sentence

(thereby not making the jail sentence "in addition" to the jail time already served). *Id*.

Petitioner's counsel then interjected that one of the offers that had earlier been

acceptable to Petitioner was a year and a day in prison for the possession of cocaine,

and she suggested that he then receive one year of probation after that for the bad

check cases to give him time to make restitution. *Id*., R. 51. She said she thought that

Petitioner would prefer that. *Id*. Petitioner did not voice any objection. *Id*. The court

commented that Petitioner had to be in a tier two or "modality" drug program while

serving a year and a day in state prison, but when he got out, he would have to be

housed in county jail until space was available for inpatient treatment at NPI. *Id*., R. 52.

The court said that if the Florida Department of Corrections did provide this drug

treatment program and Petitioner successfully completed it, when he left prison, he

would go into aftercare treatment, not inpatient treatment. *Id*., R. 53. The court then

worried that the one year of probation would not be enough to complete drug treatment,

and proposed to impose two years of probation with the chance for early termination.

*Id*., R. 53-54. The court asked if that was what Petitioner wanted to do, and Petitioner

said yes. *Id*., R. 54. The court then summarized the agreement, adding that during the

two years of probation following the one year and one day prison time, if Petitioner had

not finished enough inpatient treatment, he would stay in county jail, but no longer than eleven months 29 days, until a bed space at NPI opened up. *Id.*, R. 54-55.

Petitioner did not voice any objection to the new plea agreement. *Id.*, R. 55-58. Petitioner told the court he wanted the court to accept the plea agreements. *Id.*, R. 57. He understood he would terminate probation early if he paid restitution. *Id.* He said he was entering these plea agreements freely and voluntarily. *Id.*, R. 58.

The state court's findings as to what occurred during the plea colloquy are fully supported by the transcript discussed above. The state court actively entered into plea negotiations, as permitted under Florida law, but did not initiate them because counsel was the first to begin discussing the details of a plea.[5] Petitioner's attorney suggested the one year and one day prison sentence as preferred by Petitioner, and Petitioner told the court he agreed to it. Petitioner had a full opportunity to object but did not. There is nothing in the transcript of the plea colloquy to suggest that the plea was involuntary. "A guilty plea is knowingly and voluntarily made if the defendant enters his plea without coercion and understands the nature of the charges and the consequences of his plea."

---

[5] This is consistent with Florida law:

[W]e do not proscribe judicial participation in the plea bargaining process; however, judicial involvement must be limited "to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice." . . . The trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of a party.

State v. Warner, 762 So.2d 507, 513 (Fla. 2000).

United States v. Brown, 586 F.3d 1342, 1346 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 2403 (2010).

The agreement reached did not impose a vindictive sentence for exercising the right to go to trial or for exercising any other constitutional right. Petitioner was actively involved in plea negotiations with the court and he did not go to trial. Consequently, Petitioner has not shown that the state court's rejection of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

## Ground two

This claim raises additional issues concerning the voluntariness of Petitioner's guilty plea and additionally, attacks the violation of probation proceeding. Petitioner asserts that his plea was involuntary because on October 11, 2004, the court did not advise him of the maximum penalty and failed to establish a factual basis for the plea. Doc. 1, p. 4. He alleges that on December 12, 2005, when he proposed to admit the alleged violations of probation, the court failed to place him under oath and failed to establish a factual basis for the admissions. *Id.*

In ground two in Petitioner's Rule 3.850 motion, Petitioner claimed that his plea was involuntary because the state court did not advise him of the maximum penalty. Ex. L, R. 9. The reference was only to the first plea colloquy, on October 11, 2004, which resulted in imposition of two years of probation. *Id.*, R. 10. In ground three, he argued that his plea was involuntary on October 11, 2004, because a factual predicate

for the plea was not established. *Id.*, R. 11. In ground four, Petitioner claimed in part that his plea to the violation of probation on December 12, 2005, was deficient because he was not placed under oath and because a factual basis was not established for the violation. *Id.*, R. 14-15. Since the denial of this motion was appealed, it appears that Petitioner exhausted state court remedies as to the multiple claims before this court alleged ground two.

As to Rule 3.850 ground two, the trial court implicitly acknowledged that the court had not advised Petitioner of the maximum penalties he faced during the October 11, 2004, plea colloquy, but cited FLA. R. CRIM. P. 3.172(c)(1), which provides that "[f]ailure to follow any of the procedures in this rule shall not render a plea void absent a showing of prejudice." Ex. L, R. 35. The court found no prejudice because the one year and one day sentence was shorter than the statutory maximum of five years. *Id.*, R. 35-36. The court again referred to the plea colloquy and its finding that the plea was knowingly and voluntarily made. *Id.*, R. 36. The court reasoned from Petitioner's criminal record that Petitioner was "extremely familiar with the criminal justice system." *Id.* As to ground three, the court found that a factual basis for the plea was established by stipulation to the probable cause affidavit. *Id.* With respect to the two allegations concerning the probation revocation hearing, the Rule 3.850 court ruled a factual basis for revocation was established by stipulation. *Id.*, R. 37-38. With respect to the allegation that Petitioner was not under oath when he admitted violation of probation, the court again cited FLA. R. CRIM. P. 3.172(c)(1), which provides that "[f]ailure to follow any of the procedures in this rule shall not render a plea void absent a showing of prejudice." *Id.*, R. 38.

Case No. 4:08cv447-MP/WCS

A violation of FLA. R. CRIM. P. 3.172 does not, standing alone, violate federal due process.   The Eleventh Circuit has held that:

> [s]tates are free to adopt procedural rules requiring a factual basis as Florida has done in Rule 3.172(a).  The federal Constitution, however, does not mandate them to do so, and a violation of such state procedural rules does not of itself raise constitutional questions reviewable by federal habeas courts.

Wallace v. Turner, 695 F.2d 545, 548 (11th Cir.), *rehearing denied*, 706 F.2d 318 (11th Cir. 1983) (citations omitted).

While Petitioner has not said so, perhaps his claim as to his original plea is that, had the court told him that he faced a maximum five year sentence, he would not have entered a plea because he would then be exposed to a five year sentence if he violated the probationary term.  Even had Petitioner made that claim, this would not show the plea to have been involuntary.  The Eleventh Circuit's reasoning in Long v. United States, 883 F.2d 966 (11th Cir. 1989) is applicable here:

> In addition, appellant's contention that he would not have pled guilty had he known he could still receive the maximum ten-year sentence if he violated his probation is, as the district court noted, "inherently incredible."  Presumably, when appellant pled guilty he intended to complete successfully his term of probation, and therefore the consequences of violating it would have been a peripheral concern in comparison to whether he would go to prison at all.

883 F.2d at 970.

The claim that either the original plea or Petitioner's admission that he violated probation were involuntary for lack of factual predicates is without merit.  In both proceedings, Petitioner's attorney stipulated that a factual predicate existed.  Ex. L, R. 58 (initial plea) and 87 (VOP).  But more important, at neither proceeding did Petitioner proclaim his innocence.  This defeats any due process claim.  "[T]he due process

clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence." Wallace v. Turner, 695 F.2d at 548. A guilty plea uncoupled with a simultaneous claim of innocence does "not present the issue of voluntariness, the fundamental constitutional consideration when evaluating the validity of a plea . . . ." *Id.* "A factual basis is necessary for accepting of a guilty plea by a trial court when a defendant proclaims his innocence and yet pleads guilty." Stano v. Dugger, 921 F.2d 1125, 1140 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991), citing Wallace and North Carolina v. Alford, 400 U.S. 25, 38 & n. 10, 91 S.Ct. 160, 167-68 & n. 10, 27 L.Ed.2d 162 (1970). *See also* Rogers v. Maggio, 714 F.2d 35, 38 n. 5 (5th Cir. 1983), citing Wallace ("The failure to provide a factual basis for a guilty plea presents a constitutional claim relating to the knowing and voluntary aspect of the plea only when the defendant proclaims his innocence while pleading guilty.").

That Petitioner was not under oath when he admitted the violation of probation is a matter of no consequence. An oath is to encourage Petitioner to tell the truth. An oath is useful to establish a factual predicate for the plea, but honesty, at least in this context, has nothing to do with volition. Surely Petitioner does not contend that his admission that he violated probation was involuntary because it was untruthful. For all of these reasons, the state court's rejection of the several claims raised in ground two has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground three**

Petitioner contends that his original plea was involuntary because the court permitted Petitioner's attorney to stipulate that a factual basis existed, and did not independently determine that the factual basis existed. Petitioner does not allege that he asserted his innocence when he entered his no contest plea. This fails to state a federal claim for the reasons stated above.

**Ground four**

Petitioner contends that his attorney was ineffective because his attorney advised him that he would receive a prison sentence of 19 months (at the VOP hearing) with an "open" plea. Doc. 1, p. 5. Petitioner alleges that he told his lawyer he would rather "take the state's offer of 30 months [if] the state [dropped] the 1 year probation because Petitioner did not feel safe Pleading to the Judge." *Id.* Petitioner asserts that his attorney failed to communicate this intention and, instead, entered an open plea. *Id.*

This claim seems to have been raised as ground five in Petitioner's Rule 3.850 motion. Ex. L, R. 17. As with other claims, it will be assumed here that Petitioner intends to raise the same claim in this court. In the Rule 3.850 motion, Petitioner clarifies that this is a challenge to the violation of probation proceeding. *Id.*, R. 18. Petitioner alleges that prior to the hearing on December 12, 2005, the prosecutor offered a sentence of 30 months followed by one year of probation or, alternatively, a prison term of 48 months, apparently without a following term of probation, if Petitioner admitted that he violated probation. *Id.* Petitioner alleges his attorney then told him that he would receive a 19 month sentence, again apparently without a term of probation, if he would admit the violations. *Id.* Petitioner asserts that he told his lawyer to tell the State that he would admit the violations for a sentence of 30 months without probation

to follow.  *Id.*  He alleges that his attorney said that the state "would not go any lower" but that he would enter a plea and "the Court would be inclined to impose a 19 month" prison sentence.  *Id.*  Petitioner contends that he was willing to accept the State's plea offer, but his lawyer refused to convey his willingness to the State.  *Id.*  Petitioner did not allege that he was willing to accept 30 months *followed by one year of probation.*  *Id.*  Thus, Petitioner faults counsel for promising a 19 month sentence and failing to convey his willingness to accept the State's offer.  *Id.*, R. 19.

In denying this claim, the state court noted that Petitioner had contradicted himself because he had stated earlier in his motion that he did not want to accept the State's offer of 30 months in prison followed by one year on probation.  *Id.*, R. 40.  The court also noted that at the start of the VOP hearing, Petitioner made no objection when counsel said that Petitioner had rejected the State's offer.  *Id.*  It was also noted that there then ensued an extensive discussion in which Petitioner participated.  *Id.*  The court reasoned that it was likely that Petitioner's attorney had told him that he *could* be sentenced to 19 months since that was the lowest possible sentence on the scoresheet, and Petitioner admitted that he saw the score sheet on the State's formal plea offer.  *Id.* The court concluded that Petitioner had not shown either attorney error or prejudice to the outcome.

The <u>Strickland</u> formula applies to claims of ineffectiveness of counsel in the context of a guilty plea.  <u>Hill v. Lockhart</u>, 467 U.S. 52, 58, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985); <u>Stano v. Dugger</u>, 921 F.2d 1125, 1149 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991) (citing <u>Hill</u>, other citations omitted).  While the performance analysis is the same, the prejudice inquiry focuses on the effect of counsel's

performance on the guilty plea process, and "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 921 F.2d at 1150, *quoting* Hill, 467 U.S. at 59, 106 S.Ct. at 370.

On December 12, 2005, at the violation of probation hearing, Petitioner's attorney began by stating that Petitioner "has rejected the State's plea offer and wishes to plea straight up to your Honor." *Id.*, R. 84. Counsel said he had gone through the plea and acknowledgment of rights, and Petitioner did not want to sign the form. *Id.* Counsel said that Petitioner did not want to sign the form because he did not want to give up his right to appeal and he wanted to appeal what he thought was an illegal original sentence. *Id.*, R. 84-85. The court told him it was too late to appeal that sentence. *Id.*, R. 85. Petitioner did not object to his attorney's statement that he had rejected the State's plea offer. *Id.* The prosecutor described the alleged violations of probation (driving while license suspended, improper attachment of tag, and failure to report in August). *Id.*, R. 87. The court asked if Petitioner wanted to admit to the violations and Petitioner said that he admitted them. *Id.* He added: "There ain't no way I can beat them. I'm not even arguing that I can." *Id.* Petitioner said that he understood that he was giving up his right to a hearing, and denied that anyone had threatened him to admit the violations, and he said his decision was freely and voluntarily made. *Id.*, R. 87-88. He said he was satisfied with his lawyer. *Id.*, R. 88. His attorney stipulated to the factual basis for the admission of violations. *Id.* Petitioner said he understood that the maximum penalty that could be imposed was five years in prison. *Id.* Petitioner acknowledged that he had "no agreement with the State as to what disposition will be."

The court accepted the admission of violations. *Id.* At no time did Petitioner complain

that he had tried to accept the State's prior offer, that is, 30 months followed by one

year of probation. At no time did Petitioner complain that his lawyer promised that he

would be sentenced to 19 months in prison. The State argued that given Petitioner's

record, he would not be successful on probation, and asked for the maximum term. *Id.*,

R. 89. The court sentenced Petitioner to 5 years in prison. *Id.*, R. 90.

> In a post-conviction challenge to a guilty plea:

> [T]he representations of the defendant, his lawyer, and the prosecutor at
> [the plea] hearing, as well as any findings made by the judge accepting
> the plea, constitute a formidable barrier in any subsequent collateral
> proceedings. Solemn declarations in open court carry a strong
> presumption of verity. The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)

(citations omitted); *see also* United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800

and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that

statements made during a plea colloquy are true, citing Blackledge and other cases).

Petitioner has not shown that the state court's rejection of this claim has "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." §

2254(d)(1).

**Ground five**

Petitioner argues that the civil judgment that was imposed after revocation of

probation (costs) was invalid because, although it was in writing, it "was not orally

pronounced in court."  Doc. 1, p. 7.  He argues that this exposed him to double

jeopardy.

The state court struck all discretionary costs imposed that were not orally

announced, leaving only the mandatory statutory costs.  Ex. N, pp. 21-24.  The

remaining costs at issue are purely state law issues.  The Double Jeopardy Clause

protects against three distinct abuses:  a second prosecution for the same offense after

acquittal; a second prosecution for the same offense after conviction; and multiple

punishments for the same offense.  <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717, 89

S.Ct 2072, 2076, 23 L.Ed.2d 656 (1969).  This claim is not a double jeopardy claim.  It is

simply a state law procedural claim and fails to state a federal claim.

**Ground six**

Petitioner contends that his five year sentence for violation of probation was

illegal because the two year term of probation added to the original prison sentence was

the maximum prison term upon revocation of probation.  Doc. 1, p. 7.  Respondent

argues that the claim is moot because Petitioner has already served the sentence and

is no longer in custody on the sentence.

Respondent is correct.  Petitioner was released from service of that five year

sentence only a few months after he filed this § 2254 petition.  The claim is moot

because the court can no longer grant any relief.  *Cf.* <u>Lane v. Williams</u>, 455 U.S. 624,

102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) (habeas challenge to three-year term of

mandatory parole was moot because petitioners had completed serving term of

imprisonment and were no longer subject to any parole terms).

Furthermore, this is not a federal claim.  It is only a state law claim.  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines).

**Ground seven**

Petitioner contends his sentence was "illegal" for failure to award proper credit for time served.  Doc. 1, p. 8.  This claim is moot for the reasons stated with respect to ground six.  It likewise fails to state a federal claim.

**Ground eight**

Petitioner contends that the civil judgment imposing costs was illegal "for failing to list any amount and there was no oral pronouncement or opportunity to be heard."  Doc. 1, p. 8.  This fails to state a federal claim in part for the reasons set forth with respect to ground five.  The only costs imposed upon Petitioner were those mandated by statute.  Further, there is no right to a due process hearing before a person is affected by a law that applies to a general class of persons.  "The Supreme Court has recognized that determinations that are legislative in character may satisfy due process without the requirement of individualized notice and hearing for each instance in which a deprivation occurs."  Peterman v. Coleman, 764 F.2d 1416, 1419 (11th Cir. 1985), citing Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

> "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process-the legislative process."  2 R. Rotunda, J. Novak & J. Young, Treatise on Constitutional Law: Substance and Procedure § 17.8 at 251 (1986) [hereinafter Rotunda]; see *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).

Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Com'n, 889 F.2d 929, 936 (10th Cir. 1989).

**Certificate of Appealability**

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Paul Branch challenging his conviction for possession of cocaine in the Circuit Court of the Second Judicial Circuit, in and for Jefferson County, Florida,

case number 04-077-CFA, be **DENIED WITH PREJUDICE** and that a certificate of

appealability be **DENIED** pursuant to § 2254 Rule 11(a).

    **IN CHAMBERS** at Tallahassee, Florida, on December 27, 2010.


                **s/    William C. Sherrill, Jr.**
                **WILLIAM C. SHERRILL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:08cv447-MP/WCS